**UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION; United Mine Workers of America, District 22; United Mine Workers of America, Local No. 8003, Plaintiffs,**

v.

**U.S. STEEL MINING COMPANY, INC. and Kaiser Steel Corporation, Defendants.**

Civ. No. 85–C–1060W.

United States District Court,
D. Utah, C.D.

April 22, 1986.

A. Wally Sandack, Salt Lake City, Utah, Michael H. Holland, Kurt Kobelt, Washington, D.C., Jonathan Wilderman, Denver, Colo., for plaintiffs.

Peter W. Billings, Stanford B. Owen, Salt Lake City, Utah, Warren L. Tomlinson, Jeffrey T. Johnson, Denver, Colo., for defendant Kaiser Steel Corp.

David A. Anderson, Salt Lake City, Utah, Leo M. Pruett, San Francisco, Cal., S.G. Clark, Pittsburgh, Pa., for defendant U.S. Steel Mining, Co., Inc.

WINDER, District Judge.

This matter is before the court on defendants' motions for summary judgment and on plaintiffs' motion for partial summary judgment as to liability on Counts I, II, and III of plaintiffs' complaint. A hearing on the motions was held on March 10, 1986. The plaintiffs, United Mine Workers of America, International Union, District 22, and Local No. 8003 (hereinafter collectively referred to as the "UMWA"), were represented by Arthur Sandack, Kurt Kobelt, and Martin Linnet. Defendant U.S. Steel Mining Company, Inc. ("U.S. Mining") was represented by Leo M. Pruett; and defendant Kaiser Steel Corporation ("Kaiser") was represented by Stanford B. Owen and Jeffrey T. Johnson. At the conclusion of the hearing, the court took the matter under advisement. The court has reviewed and carefully considered the parties' oral arguments and memoranda, including pertinent authorities cited therein, and the entire file. Now being fully advised, the court renders the following memorandum decision and order.

## Background

This case involves a dispute over the obligations of U.S. Mining and Kaiser under the successorship clause, Article I of the 1984 National Bituminous Coal Wage Agreement ("1984 NBCWA"),[1] with respect to former employees of U.S. Mining's Geneva/Horse Canyon Mine who are represented by the UMWA. Specifically, the issues are (1) whether U.S. Mining was bound under Article I of the 1984 NBCWA to secure the agreement of Kaiser to assume U.S. Mining's obligations under the 1984 NBCWA in connection with the sale to Kaiser of the assets of the closed and abandoned Geneva/Horse Canyon Mine, and, if so, (2) whether Kaiser, a non-signatory to the 1984 NBCWA, must recognize recall panel rights of the laid-off former Geneva/Horse Canyon employees at Kaiser's other mines, such as the Sunnyside Mine.

Essentially, the UMWA claims that U.S. Mining's sale of the Geneva/Horse Canyon Mine to Kaiser without an unconditional transfer of U.S. Mining's obligations under the 1984 NBCWA violated the successorship provision of the 1984 NBCWA and that Kaiser induced U.S. Mining's breach of the contract. The UMWA's complaint states claims under section 301 of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185, of breach of contract (against U.S. Mining) and of tortious interference with contract (against Kaiser). The UMWA's complaint also states claims of breach of contract and tortious interference under Utah law and seeks to impose an equitable servitude upon the assets transferred from U.S. Mining to Kaiser.

## Undisputed Facts

The material facts in this case are not disputed.

U.S. Mining, a subsidiary of United States Steel Corporation, is a corporation with its principal place of business located in Pittsburgh, Pennsylvania. U.S. Mining is engaged in the production of coal at several mines located throughout the United States.

---

1. Article I of the 1984 NBCWA provides in pertinent part: "In consideration of the Union's execution of this Agreement, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement."

Kaiser is a corporation with its principal place of business located in Colorado Springs, Colorado. Kaiser is engaged in the production of coal at its two mines, the Sunnyside Mine, located in Carbon and Emery Counties, Utah, and the York Canyon Mine, located near Raton, New Mexico.

The UMWA is an unincorporated labor organization within the meaning of section 2(5) of the LMRA. Employees of the former U.S. Mining Geneva/Horse Canyon Mine are members of and represented by the UMWA.

The UMWA is a party to a collective bargaining agreement, the 1984 NBCWA, with the Bituminous Coal Operators' Association, Inc. ("BCOA"), a multiemployer bargaining unit made up of a number of coal operators and associations. U.S. Mining is a member of the BCOA and, therefore, a signatory to the 1984 NBCWA. Kaiser is not a signatory to the 1984 NBCWA.

Until October, 1982, U.S. Mining owned and operated the Geneva/Horse Canyon Mine. U.S. Mining ceased actively mining coal at the Geneva/Horse Canyon Mine on October 13, 1982. At that time, the vast majority of the mine's employees were laid off. A handful of employees was recalled in late 1983 to dismantle and remove equipment in the mine and prepare the mine for its eventual shutdown. Effective December 31, 1983, U.S. Mining officially declared the Geneva/Horse Canyon Mine abandoned and indefinitely closed. Only two employees were retained to maintain "fire watch." These last two employees were eventually laid off in August, 1984. Thereafter, U.S. Mining employed no bargaining unit employees at the mine.

The decision by U.S. Mining to cease operations at and to close the Geneva/Horse Canyon Mine was made solely for business and economic reasons. In other words, the mine closure was unrelated to labor relations and not an attempt to circumvent the 1984 NBCWA.

Negotiations for the sale of the Geneva/Horse Canyon Mine to Kaiser began around May, 1984, about nineteen months after active coal mining operations at the mine had ceased and about four months after the mine had been officially closed and formally abandoned. The sale of the mine to Kaiser closed in December, 1984.

It was Kaiser's view during the negotiations that Kaiser's purchase of the assets of a closed and abandoned mine did not constitute the sale of an "operation" within the meaning of the successorship clause, Article I of the 1984 NBCWA, and that U.S. Mining therefore was not required to secure Kaiser's agreement to assume U.S. Mining's obligations under the 1984 NBCWA. It is the UMWA's position that the transfer of the mine was subject to Article I of the NBCWA, that U.S. Mining was obligated to impose the terms of the 1984 NBCWA upon Kaiser, and that Kaiser is bound by the 1984 NBCWA and also required to recognize panel rights of the laid-off former Geneva/Horse Canyon employees at Kaiser's other mines, such as the Sunnyside Mine.

At no time since the sale has Kaiser reopened the Geneva/Horse Canyon Mine or engaged employees to produce coal at the mine. Although Kaiser has performed a limited amount of maintenance and security work, consisting mainly of equipment salvage and recovery and the provision of guard and security facilities, Kaiser has not conducted any mining operations at the mine.

*Discussion*

Determination of whether U.S. Mining was bound under Article I of the 1984 NBCWA to secure the unconditional agreement of Kaiser to assume U.S. Mining's obligations under the 1984 NBCWA in connection with the sale of the Geneva/Horse Canyon Mine turns on whether Kaiser purchased an "operation" within the meaning of Article I of the 1984 NBCWA.

Based on a careful reading of the 1984 NBCWA and the entire file, this court is convinced that, as a matter of law, a mining "operation," for purposes of Article I of the 1984 NBCWA, refers to a mine site

or facility where active coal mining operations are being conducted. That is, an "operation" connotes a mine that is actively producing coal and operating as a coal mine. Thus, a mine that has ceased to function as an active coal mine is not an "operation," assuming the mine was closed in good faith. The mine closure and subsequent sale must be carefully scrutinized to determine whether the mine was closed and later sold in good faith or as an attempt to circumvent or evade the collective bargaining agreement. This utmost scrutiny is essential because a mine closure cannot be used by employers as a subterfuge to escape their obligations under the collective bargaining agreement. If there is even the slightest hint that a mine has been closed to circumvent the collective bargaining agreement and undermine the successorship clause, a court should not accord weight to the fact that the mine has been closed prior to the sale. In other words, to prevent employers "from engaging in 'paper tricks' insidiously devised to unjustly deprive [employees] of contractual rights they have earned through years of toil in the mines," the court must examine the substance of a closure and subsequent conveyance to determine if the shutdown exalts form over substance. *Local Union 2935, UMWA v. Nephi Coal Properties, Inc.*, Arb.Rev.Bd. 78–17 at 17–18 (Oct. 10, 1979) (Seely, Arb.).[2] Nevertheless, "while it is true that great care must be exercised to safeguard bargained and earned rights, it is equally important that it be recognized that they are limited to the contractual language which embodies them." *Id.* at 18.

In the present case the UMWA concedes that in October 1982, well before U.S. Mining and Kaiser even began negotiations for the sale of the Geneva/Horse Canyon Mine, U.S. Mining ceased mining operations at the mine solely for economic and business reasons and developments in the coal market and that U.S. Mining eventually closed the mine in good faith and officially announced that it would not reopen the mine. (Plaintiffs' Brief, pp. 5, 6, 9–11, 31–32). Apparently, the Geneva/Horse Canyon Mine was no longer economically viable to U.S. Mining. Kaiser subsequently purchased the assets of the closed and abandoned mine and has not yet resumed operations at the mine. There is no suggestion in the record that U.S. Mining closed the mine in bad faith or that the closure was motivated to avoid successorship obligations. Based on these undisputed facts, the court is of the opinion that Kaiser did not purchase an "operation."[3] Consequently, the successorship clause, Article I of the 1984 NBCWA, did not require U.S. Mining to secure Kaiser's unconditional agreement to assume U.S. Mining's obligations under the 1984 NBCWA and Kaiser did not assume such obligations. It follows, then, that the laid-off former employees of the Geneva/Horse Canyon Mine are not entitled to panel rights at Kaiser's mines.

The limited recovery, repair, and maintenance activity (although classified work under the 1984 NBCWA) at the Geneva/Horse Canyon Mine after it had ceased to function as an operating coal mine is not

2. *See also International Union, UMWA v. Eastover Mining Co.*, 603 F.Supp. 1038, 1044 (W.D. Va.1985) (intention to evade rather than to enter into a meaningful contract?); *Nephi Coal Properties*, Arb.Rev.Bd. 78–17 at 17–18 (court must penetrate the mere form of transactions to assure that in reality and substance what is done is not permitted to transgress the protection successfully negotiated at the bargaining table by the union).

3. The UMWA contends that for purposes of the successorship clause, Article I of the 1984 NBCWA, an "operation" is transferred when the capacity to mine coal is transferred. Accordingly, the UMWA argues that when U.S. Mining

transferred all of its rights to mine coal from the Geneva/Horse Canyon Mine, which apparently has 5 million tons of recoverable reserves and is capable of producing coal, U.S. Mining transferred an "operation" to Kaiser within the meaning of the successorship clause, Article I of the 1984 NBCWA. The court disagrees. Based on the court's reading of the 1984 NBCWA and the materials presently before it, the facts that Kaiser has the legal right to operate a mine that has been closed and abandoned in good faith and that the mine has recoverable reserves and is capable of producing coal do not mean that Kaiser purchased a mining "operation."

sufficient to establish that a mining "operation," for purposes of Article I of the 1984 NBCWA, was transferred to Kaiser. Since the property that changed hands at the closing was a structure that no longer operated as an active coal mine, there was no sale of an "operation."

The UMWA cites *International Union, UMWA v. Eastover Mining Co.*, 603 F.Supp. 1038 (W.D.Va.1985), in support of its position that U.S. Mining transferred an "operation" to Kaiser. *Eastover*, however, is readily distinguishable from the present case since the closure of the mine and subsequent sale in *Eastover* were an obvious and admitted attempt to circumvent and evade the collective bargaining agreement. The buyer in *Eastover* wanted to purchase a mine from the seller without having to assume the seller's obligations under the collective bargaining agreement. The buyer retained a management consulting firm to come up with a way for the buyer to purchase the mine but avoid the Article I successorship obligation. The consulting firm advised the buyer of the exact procedures to take: the seller should close down the mine and lay off its employees, and the buyer should wait a month before purchasing the mine. Upon the buyer's request, the seller followed the consulting firm's advice by closing the mine and terminating its employees. After waiting over a month, the buyer purchased the mine and did not operate it throughout the remaining term of the collective bargaining agreement. The shutdown was, from the start, forthrightly conceded by the seller and buyer to have been motivated as a device to avoid the successorship obligation by idling the mine before the sale and letting it remain idle after the sale until the end of the UMWA contract. The court quite easily and understandably found that the bad faith closure was "a matter of form rather than substance, a meaningless ruse rather than a meaningful act" and granted summary judgment in favor of the union. *Id.* at 1045.

*Eastover* must be read in light of the single overriding factor: The manipulated closing of the mine prior to the sale constituted an obvious artifice to avoid the successorship obligation. On the other hand, in the present case, as the UMWA concedes, U.S. Mining closed the Geneva/Horse Canyon Mine in good faith and solely for economic reasons. The UMWA has failed to produce even a scintilla of evidence that U.S. Mining's decision to close the Geneva/Horse Canyon Mine was the product of collusion between Kaiser and U.S. Mining to circumvent the 1984 NBCWA.

The present case is more in point with the case of *District 6, UMWA v. North American Coal Corp.*, No. C–2–79–242 (S.D.Ohio Mar. 21, 1980). In *North American* the cessation of mining was not motivated by a desire to avoid the successorship clause or to evade the collective bargaining agreement. Activity at the mine site and coal production and processing at the tipple ceased due to strike on December 6, 1977. The mine lay still for three months until March 1, 1978, at which time North American announced its intention to close the mine permanently. Some employees remained to do recovery work until August 1978. Two employees stayed on until December 1978. There was no suggestion that the closing in *North American* was made in bad faith. In December 1978 North American agreed to sell, *inter alia*, the tipple and appurtenant land to the buyers. The sale closed in February 1979, fourteen months after mining ceased and a year after North American's official announcement that it would not reopen the mine. At the time of the filing of affidavits in the case, in August 1979, the buyers had not yet commenced operations at the mine; they had only undertaken certain maintenance and repair work. Because all activity and operations at the mine ceased in good faith several months before the sale and had not been resumed, the court held that there was no sale of an "operation" as contemplated by Article I of the collective bargaining agreement and that North American did not violate the successorship clause by failing to secure the buyers' agreement to assume North American's obligations. The court further held that although certain limited recovery activities occurred after cessation of the coal

mining operations and such activity was work covered by the collective bargaining agreement, the recovery work was merely a winding down and packing up of the site and not an active operation of the mine. *Id.* at 5–6. The court granted summary judgment in favor of North American.

As mentioned, the instant case involves a factual setting similar to that presented in *North American* where active coal mining operations ceased in good faith several months before the sale of the closed mine. Like the buyers in *North American,* Kaiser did not purchase an "operation" within the meaning of Article I of the 1984 NBCWA; and U.S. Mining therefore did not violate the successorship clause when it sold the Geneva/Horse Canyon Mine to Kaiser. There is no genuine issue of material fact, and defendants are entitled to judgment as a matter of law.

Accordingly,

IT IS HEREBY ORDERED that defendants' motions for summary judgment are granted and plaintiffs' motion for partial summary judgment is denied. This memorandum decision and order will suffice as the court's action on the motions. No further order need be prepared by counsel.