895 F.2d 698
 133 L.R.R.M. (BNA) 3006, 114 Lab.Cas. P 11,912
 UNITED MINE WORKERS OF AMERICA, INTERNATIONAL UNION; United
Mine Workers of America, District 22; United Mine
Workers of America, Local Union 8330,
Plaintiffs-Appellants,
v.
U.S. STEEL MINING, INC., and Kaiser Steel Corporation,
Defendants-Appellees.
 No. 86-1795.
 United States Court of Appeals,
Tenth Circuit.
 Feb. 5, 1990.
 
 Earl V. Brown, Jr., Washington, D.C., (Michael H. Holland, Washington, D.C., and Daniel B. Edelman, Yablonski, Roth and Edelman, Washington, D.C., was also on the brief), for plaintiffs-appellants.
 Jeffrey T. Johnson, Holland & Hart, Denver, Colo. (Warren L. Tomlinson, Holland & Hart, Denver, Colo., was also on the brief), for defendant-appellee, Kaiser Steel Corp.
 Leo M. Pruett and S.G. Clark, Pittsburgh, Pa., for defendant-appellee, U.S. Steel Mining, Inc.
 Before HOLLOWAY, Chief Judge, ANDERSON, Circuit Judge, and DUMBAULD, District Judge*.
 HOLLOWAY, Chief Judge.
 
 
 1
 This appeal arises from a suit brought under Sec. 301 of the Labor Management Relations Act of 1947, 29 U.S.C. Sec. 185, by the United Mine Workers of America, International Union, District 22, and Local No. 8003 (collectively referred to as "UMWA"), against U.S. Steel Mining Company ("U.S. Mining") for breach of contract and against Kaiser Steel Corporation ("Kaiser") for tortious interference with contract. The district court granted U.S. Steel's and Kaiser's motions for summary judgment, United Mine Workers v. U.S. Steel Mining Co., 636 F.Supp. 151 (D.Utah 1986), and UMWA appeals. For substantially the same reasons stated by the district court, we affirm.
 
 I.
 
 2
 The material facts are not disputed. U.S. Mining is a subsidiary of U.S. Steel Corporation, engaged in the production of coal from mines throughout the United States, including the Geneva/Horse Canyon Mine which is subject to this lawsuit. U.S. Mining is a member of the Bituminous Coal Operators' Association, Inc., ("BCOA"), a multiemployer bargaining unit made up of many coal operators and associations.
 
 
 3
 Kaiser is also engaged in the production of coal. Its Sunnyside Mine is located near the Geneva/Horse Canyon Mine. Kaiser purchased the Geneva/Horse Canyon Mine as a means of access to its South Lease properties. Kaiser is not a member of the BCOA.
 
 
 4
 Employees of the Geneva/Horse Canyon Mine are represented by UMWA. Both UMWA and U.S. Mining are parties to the 1984 National Bituminous Coal Wage Agreement ("NBCWA").
 
 
 5
 The Geneva/Horse Canyon Mine was owned and operated by U.S. Steel or U.S. Mining from 1946 through 1984. U.S. Mining actively produced coal from the mine until October 13, 1982, at which time the majority of the mine employees were laid off. The mine was maintained on idle standby until December 31, 1983, at which time U.S. Mining officially declared the mine abandoned and indefinitely closed. Kaiser purchased the Geneva/Horse Canyon Mine in December 1984. At no time since the sale has Kaiser reopened the mine or engaged employees to produce coal at the mine. Kaiser has performed a limited amount of maintenance and security work there, mainly equipment salvage and recovery and also the provision of guard and security facilities at the mine.
 
 II.
 
 6
 The central issue is whether the obligations imposed by the successorship clause of the NBCWA[1] required U.S. Mining to secure the agreement of Kaiser to accept the responsibilities under the NBCWA in connection with the sale of the Geneva/Horse Canyon Mine. The district court correctly focused on whether Kaiser purchased an "operation" within the meaning of the successorship clause. The court held that
 
 
 7
 a mining "operation," for purposes of Article I of the 1984 NBCWA, refers to a mine site or facility where active coal mining operations are being conducted. That is, an "operation" connotes a mine that is actively producing coal and operating as a coal mine. Thus, a mine that has ceased to function as an active coal mine is not an "operation," assuming the mine was closed in good faith.
 
 
 8
 ....
 
 
 9
 ... There is no suggestion in the record that U.S. Mining closed the mine in bad faith or that the closure was motivated to avoid successorship obligations. Based on these undisputed facts, the court is of the opinion that Kaiser did not purchase an "operation." Consequently, the successorship clause, Article I of the 1984 NBCWA, did not require U.S. Mining to secure Kaiser's unconditional agreement to assume U.S. Mining's obligations under the 1984 NBCWA and Kaiser did not assume such obligations. It follows, then, that the laid-off former employees of the Geneva/Horse Canyon Mine are not entitled to panel rights at Kaiser's mines.
 
 
 10
 636 F.Supp. at 153-54 (footnote omitted).
 
 III.
 
 11
 UMWA argues the district court erred by holding that the term "operations" in Article I of the NBCWA refers to mines that are actively producing coal. UMWA says that the trial court's decision is contrary to federal labor policy regarding successorship clauses. The court's decision "read out of the parties' agreement the preservation of all job rights which pertain to inactive mines." Brief of Appellants at 2.
 
 
 12
 In construing the term "operations," the district court relied on District 6, UMWA v. North American Coal Corporation, No. C-279-242 (S.D.Ohio 1980). In North American, the mine at issue was sold over a year after the mine ceased operating and 11 months after the announcement that the mine would not be reopened. Vol. III, Tab A, pp. 2-3. There was no suggestion that the closing of the mine was in bad faith or motivated to avoid the responsibilities of the successorship clause. Id. at 6. Therefore, since there was no sale of an "operation" as contemplated by Article I of the NBCWA, North American did not violate the successorship clause by failing to secure the subsequent buyer's agreement to assume North American's obligations under the collective bargaining agreement.
 
 
 13
 The district court's ruling here is further supported by the recent holding in In re Chateaugay Corp., 891 F.2d 1034 (2nd Cir.1989) that the
 
 
 14
 term 'operations' within the successorship clause of Article I of the Coal Wage Agreement does not apply to the sale of a mine that has been permanently closed in good faith by a seller that retains no financial interest in any potential future mining activity at the site, and [where] there is no evidence that the same operations, as when the Agreement was executed, could reasonably be contemplated or conducted.
 
 
 15
 The UMWA relies heavily on Lone Star Steel Co. v. NLRB, 639 F.2d 545 (10th Cir.), cert. denied, 450 U.S. 911, 101 S.Ct. 1349, 67 L.Ed.2d 335 (1980). The UMWA argues that Lone Star declared that under the successorship clause "employees are assured that the fruits of collective bargaining would survive a change in ownership." Brief of Appellants at 9 (emphasis added in the brief). This was said to be an important element of federal labor policy. However, Lone Star held that the clause was a mandatory subject of bargaining so that by striking to compel its acceptance, the union did not violate Sec. 8(b)(3) of the National Labor Relations Act. 639 F.2d at 549, 556. The issues were thus decided under the statute, and not as a matter of contract interpretation which is presented here. The purpose of the clause is generally what the UMWA says, but the terms of the obligation agreed on were specific and tied to the sale, conveyance, or other transfer or assignment of "operations covered by this Agreement." This contract question was not decided by Lone Star. For similar reasons, the reliance of UMWA on Amax Coal Co. v. NLRB, 614 F.2d 872 (3rd Cir.1980), rev'd on other grounds, 453 U.S. 322, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981), is misplaced.
 
 
 16
 UMWA asserts, as it did before the district court, that International Union, UMWA v. Eastover Mining Co., 603 F.Supp. 1038 (W.D.Va.1985), supports its argument that U.S. Mining was required to obtain Kaiser's agreement to assume the obligations under the collective bargaining agreement. However, we agree with the district court that Eastover is distinguishable. Although Eastover held that a sale of the closed mine was subject to the Article I successorship clause, the seller's closure of the mine was clearly motivated by a desire to avoid the successorship obligation. The buyer, after retaining a consulting firm for advice on how it could avoid the successorship obligations, requested that the seller close the mine and terminate the employees. After the seller complied with the buyer's request, the buyer waited over one month before purchasing the mine and kept the mining operations idle until the expiration of the collective bargaining agreement. Clearly, the closure was an attempt to circumvent the collective bargaining agreement. 603 F.Supp. at 1044. Here, on the other hand, there was no evidence to suggest that the closure of the mine was collusive in nature. 636 F.Supp. at 155. The district court noted that there was no evidence to indicate that the closure was motivated to avoid successorship obligations. Id. at 154.
 
 
 17
 Relying on arbitration decisions from the Arbitration Review Board, UMWA argues that the successorship clause "applies whenever a signatory employer such as [U.S. Mining] sells a mine covered by NBCWA unless the employment obligations of the Employer were terminated." Brief of Appellants, p. 15.[2] We disagree. The arbitration decisions cited by UMWA discussing enforcement of the successorship clause against a subsequent operator of a closed mine relied on an "operational linkage" between the former operator and the successor before the clause would apply. See Standard Pocahontas Coal Corp., 78-16 (Arb.Rev.Bd., UMWA-BCOA 1979) (when former operator makes direct contractual arrangements with second operator to take over and continue part or all of the mining operations for the benefit of the former operator, the second operator becomes a successor operator); Nephi Coal Properties, Inc., 78-17 (Arb.Rev.Bd., UMWA-BCOA 1979) (where no direct sale, conveyance, or other transfer or assignment of an operation takes place between a former operator of a mine and a subsequent operator, there is no basis for a finding that the subsequent operator is the successor under Article I); Bethenergy Mines, Inc., 84-17-87-741 (1987) (Lieberman, Arb.) (operational linkage existed since subsequent lessee was obligated to pay a royalty for every ton of coal mined). Here U.S. Mining did not retain any financial interest in the operations of the Geneva/Horse Canyon Mine nor create an operational link with Kaiser.
 
 
 18
 We are convinced that the district court's ruling on the contract question was correct,[3] and accordingly the judgment is AFFIRMED.
 
 
 
 *
 The Honorable Edward Dumbauld, United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 Article 1 of the 1984 NBCWA provides in pertinent part:
 In consideration of the Union's execution of this Agreement, each Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement.
 Addendum to Brief of Appellants, pp. A.1-2.
 
 
 [2]
 Pursuant to Article XXIII of the 1984 NBCWA,
 [a]ll decisions of the Arbitration Review Board rendered prior to the expiration of the National Bituminous Coal Wage Agreement of 1978 shall continue to have precedential effect under this Agreement to the extent that the basis for such decisions have not been modified by subsequent changes in this Agreement.
 Brief of Appellants, Appendix, pp. 12-13.
 
 
 [3]
 UMWA strenuously argues that Article XVII of the NBCWA, which concerns recall and seniority rights of members when a mine is closed or abandoned, is at odds with the district court's decision that the term "operation" contemplates an active and producing mine before the successorship clause becomes applicable. We are not persuaded. The mere fact that language in Article XVII allows employees of an abandoned or closing mine to transfer to other active mines of the same employer does not compel the conclusion that the Article I successorship clause applies to the sale of a mine that is no longer operating, but was closed in good faith