UNITED MINE WORKERS OF AMERICA, DISTRICT 31, and United Mine Workers of America, Local Union Nos. 190, 1352 and 8140, Plaintiffs,

v.

THAMES DEVELOPMENT, LTD.; Consolidated Sewell, Inc.; Meadow River Coal Company; Lady H Coal Company, Inc.; and Sewell Coal Company, Defendants.

Civ. A. No. 2:92–0963.

United States District Court, S.D. West Virginia, Charleston Division.

May 25, 1993.

Under *Rule* 56(c), Federal Rules of Civil Procedure, summary judgment is proper only:

"[I]f the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law."

A principal purpose of summary judgment is to isolate and dispose of meritless litigation. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The party moving for summary judgment has the burden to show initially the absence of a genuine issue concerning any material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). However, once the moving party has met its initial burden, the burden shifts to the nonmoving party to "establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. at 322, 106 S.Ct. at 2552. To discharge this burden, the nonmoving party cannot rely on its pleadings, but instead must have evidence showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

The relevant facts surrounding Defendants' motion are largely undisputed. Plaintiffs are unincorporated labor organizations representing active and retired mine workers. Plaintiffs allege Thames, Meadow River, and Sewell Coal Company ("Sewell") are signatories to a collective bargaining agreement with the United Mine Workers of America ("UMWA"). Thames is a subsidiary of The Pittston Company ("Pittston") and Meadow River is a subsidiary of Thames.

Plaintiffs allege Sewell was a subsidiary of both Pittston and Thames prior to being merged into Meadow River in December 1991. On July 8, 1992, Meadow River reincorporated Sewell and thereafter sold all issued and outstanding stock in Sewell to Consolidated Sewell, Inc. ("Consolidated"). Consolidated is not a party to the collective bargaining agreement and has no alleged

Peter D. Dinardi, Morgantown, WV, for plaintiffs.

Charles Q. Gage, Jackson & Kelly, and Forrest H. Roles and Mark E. Heath, Smith, Heenan & Althen, Charleston, WV, for defendants.

### MEMORANDUM OPINION AND ORDER

HADEN, Chief Judge.

Pending is the motion for summary judgment of Defendants Thames Development, Ltd. ("Thames"), and Meadow River Coal Company ("Meadow River"). The Court concludes there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law. Accordingly, the Court **GRANTS** summary judgment in favor of Thames and Meadow River.

preexisting or subsequent operational links to either Pittston, Thames, Meadow River, or Sewell.[1] Meadow River did not secure an agreement from Consolidated that the latter would assume any obligations of Sewell or Meadow River under the collective bargaining agreement.

The "successorship clause" under Article I of the collective bargaining agreement provides as follows:

In consideration of the Union's execution of this Agreement, each and every Employer promises that its operations covered by this Agreement shall not be sold, conveyed, or otherwise transferred or assigned to any successor without first securing the agreement of the successor to assume the Employer's obligations under this Agreement.

Plaintiffs assert Meadow River's sale of stock it held in Sewell to Consolidated violated the terms of the successorship clause. Thames and Meadow River assert, *inter alia,* the sale of stock to Consolidated was not an "operation" under the successorship clause and, therefore, not subject to its terms.

The term " 'operation' connotes a mine that is actively producing coal and operating as a coal mine." *United Mine Workers of America v. U.S. Steel Mining Co., Inc.,* 636 F.Supp. 151, 154 (D.Utah 1986), *aff'd,* 895 F.2d 698 (10th Cir.1990). Absent bad faith,[2]

"a mine that has ceased to function as an active coal mine is not an 'operation.' " *Id.; see also United Mine Workers of America v. U.S. Steel Mining, Inc.,* 895 F.2d 698, 702 (10th Cir.1990); *United Mine Workers of America v. LTV Steel Co., Inc.,* 891 F.2d 1034, 1039 (2nd Cir.1989).

The successorship clause provides, in part, that "each and every Employer promises that its *operations* covered by this Agreement shall not be sold ..." (emphasis added). Accordingly, Sewell must qualify as an "operation" before Meadow River or Thames may be held liable under the successorship clause. Plaintiffs have not disputed Thames and Meadow River's assertion that mining operations on Sewell's properties were terminated six years prior to the 1992 sale to Consolidated. Further, there is no evidence or allegation this termination of operations was temporary, taken in bad faith, or to avoid obligations under the successorship clause.[3]

The Court concludes that Sewell was not an "operation" under the successorship clause at the time of the sale to Consolidated. The terms of the successorship clause are, therefore, inapplicable to the sale. Accordingly, the Court concludes there are no genuine issues of material fact and that Thames and Meadow River are entitled to judgment as a matter of law. The Court **GRANTS**

---

1. In Count Two Plaintiff does allege Consolidated is an "alter ego and/or single employer" with Sewell and Lady H Coal Company, Inc. ("Lady H"). However, the complaint suggests this relationship arose *after* the sale of Sewell by Meadow River:

   Plaintiffs contend that information that leads them to believe [alter ego or single employer status exists] includes, but is not limited to, the fact that the president of Lady H and Consolidated are the same person; the business addresses of both companies are the same; the operating offices of the management are located at the same address; and it appears that agents and/or officers and[/]or employees of Lady H made the decision to incorporate Consolidated, who bought Sewell on or about [July 22, 1992]. It is further asserted that although Sewell which is owned by Consolidated has applied to open certain deep mines, it is em-

   ployees of Lady H who are working the Sewell Mines.

   Compl. at ¶ 23.

   Neither this paragraph nor any allegation in Count II suggest that Pittston, Thames, or Meadow River are a single employer or alter ego with Sewell, Consolidated, or Lady H.

2. *United Mine Workers of America v. Eastover Mining Co.,* 603 F.Supp. 1038 (W.D.Va.1985) (holding, implicitly, that closure of a mine in order to circumvent a collective bargaining agreement is insufficient to defeat application of the successorship clause).

3. Plaintiffs also fail to allege or offer proof on another issue relevant to the Court's decision. Namely, there is no showing that operational "linkage" exists between the buyer and the seller. *Bethenergy Mines, Inc.,* No. 84–17–87–741 (1987) (Lieberman, Arb.); *Standard Pocahontas Coal Corp.,* 78–16 (Arb.Rev.Bd., UMWA–BCOA 1979).

Thames and Meadow River's motion for summary judgment.[4]

---

4. Thames and Meadow River have raised alternative grounds entitling them to summary judgment. The Court need not reach these alternative grounds given the conclusion that Sewell was not an "operation" at the time of the sale to Consolidated.

The Court's decision is narrow and limited to the facts of this case. Mine closures and subsequent sales should be subject to close scrutiny to protect against subterfuge designed to avoid collective bargaining agreement obligations. *See U.S. Steel,* 636 F.Supp. at 154. For purposes of the successorship clause, the Court will give no weight to a sale following closure of a mine where "there is even the slightest hint that a mine has been closed to circumvent the collective bargaining agreement." *Id.*